**UNITED STATES of America**
Plaintiff–Appellee,

v.

**Cuong HUA, Defendant–Appellant.**

No. 02–2476.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 18, 2002.

Decided Jan. 16, 2003.

Before EASTERBROOK, MANION,
and EVANS, Circuit Judges.

### ORDER

Cuong Hua pleaded guilty to one count of conspiring to possess with intent to distribute more than 50 grams of crack in violation of 21 U.S.C. §§ 846 and 841(a)(1). He appeals his 70–month sentence, arguing that the district court erred by not decreasing his base offense level based on what he claims was his mitigating role in the offense. *See* U.S.S.G. § 3B1.2(b).

Seven individuals led by Phuong Vu Nguyen ("Vu") conspired to distribute crack in the Argyle Street area of Chicago from approximately January 1999 until June 19, 2000. Vu obtained most of the crack through Sharon Sawyer, but also had several other suppliers. Vu's girlfriend, co-conspirator Phuong "Julie" Lam Nguyen, worked closely with Vu and managed the drug distribution when he visited Vietnam in November 1999 and April 2000. In late February 2000 defendant Hua allowed Vu to use his name and address to subscribe for a cellular telephone to facilitate drug transactions. During the final two months of the conspiracy, the government obtained an intercept order for this telephone and recorded both Vu and Julie conducting drug deals.

On April 23, 2000, Vu traveled to Vietnam and left Julie in charge until his re-

turn on May 18. At Vu's request, Hua agreed to protect Julie when she made drug sales and replenished her drug supply during Vu's absence. During that same period, Hua called the cellular phone registered in his name and told Julie during a recorded conversation that she should sell crack valued at $60 to "Tuan" for $50. Hua later called Julie to verify that the crack had been sold at a discount to "Tuan."

After Hua's car was stopped and searched by police on May 16, 2000, he called Julie and warned her to "hide everything" and to avoid leaving any "stuff in the house or car." Hua also called Vu when he returned from Vietnam and warned him that he believed the FBI was after Vu.

In September 2000 the government indicted the seven alleged co-conspirators. Pursuant to a written plea agreement, Hua pleaded guilty to conspiracy (count one of the indictment), stipulating to most guidelines calculations but reserving the right to argue at sentencing that his offense level be decreased by two points because he had a minor role in the offense. *See* U.S.S.G. § 3B1.2(b). The government disagreed, and the probation officer likewise recommended against reducing Hua's offense level under § 3B1.2(b).

Over Hua's objection, the district court determined at sentencing that Hua's role in the conspiracy was not "minor." The court agreed with the recommendation in the PSR that Hua played neither an aggravating nor a mitigating role in the offense. In his plea agreement Hua admitted that 127.6 grams was the amount of crack reasonably foreseeable to him, making his base offense level 32. *See* U.S.S.G. § 2D1.1(c)(4). After other adjustments, the district court arrived at a total offense level of 27, making Hua's range of imprisonment 70–87 months. The district court

sentenced Hua to 70. Had the district court granted the requested minor-participant reduction, the resulting imprisonment range would have been 57–71 months. So Hua could have saved himself 14 months (on the other hand, although it is unlikely, his sentence *with* the requested reduction could have been one month more than he actually received).

Section 3B1.2(b) permits a sentencing court to reduce by two the offense level of a defendant who is "less culpable than most other participants, but whose · role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.5). The adjustment is appropriate "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." *Id.* § 3B1.2, comment. (n.3(A)). The defendant bears the burden of proving his entitlement to the adjustment. *United States v. Felix–Felix,* 275 F.3d 627, 636 (7th Cir. 2001). Further, the sentencing court's determination as to whether the reduction is warranted "involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, comment. (n.3(C)). We therefore review the district court's finding only for clear error. *United States v. Crowley,* 285 F.3d 553, 559 (7th Cir.2002).

Hua argues that the finding was clearly erroneous for three reasons. First, he says, the court did not properly compare his role with that of his co-conspirators. Second, the court erroneously viewed Hua's role as integral to the success of the conspiracy. And third, according to Hua, the court ignored the fact that his culpability was overstated by the relevant conduct conceded in his plea agreement—127.6 grams—when he was personally involved in only one transaction involving two grams.

As to Hua's first contention, he correctly notes that a minor role adjustment is appropriate when a defendant's conduct makes him substantially less culpable than other participants; but comparative roles, though important, are not determinative. *See id.; United States v. Cea,* 963 F.2d 1027, 1033 (7th Cir.1992) (sustaining refusal to grant minor role adjustment to "go-between" based partly on the recognition that individuals may play different but essential roles in drug transactions). In comparing Hua's role with other members of the conspiracy, the district court concluded that his participation "did not either exceed or fall below that of other persons involved in the conspiracy." Hua maintains this conclusion is clearly erroneous because, unlike others, he "did not negotiate drug transactions, he did not store, package, supply or deliver drugs, he did not carry money, and he never cooked the cocaine into 'crack.'" He also relies on this distinction in his reply brief, but the page in the PSR he cites identifies him as one of the defendants who was "responsible for delivering crack cocaine to the conspiracy's customers." The government's version of the offense appended to the PSR also details that Hua assisted Vu by "delivering quantities of crack to Vu's customers and others."

Further, Hua maintains that he did not profit from the conspiracy. The government, citing its objections to the PSR for co-defendant Dai Cong Truong, admits that the only defendants who received money were Vu's source Sharon Sawyer, Vu himself, Julie and Dai Cong Truong. However, the PSR details the government's conflicting position that with the exception of one defendant (Hoang Tuan Nguyen), all the remaining defendants received either cash, narcotics, or clothing for their services. However, that Hua realized no profit, if he in fact did not, does not compel the conclusion that his role in the conspiracy was minor. *See United States v. Brown,* 136 F.3d 1176, 1186 (7th Cir.1998) ("The fact that [the defendant] did not profit from his illegal actions is not our concern."); *United States v. Brick,* 905 F.2d 1092, 1095 (7th Cir.1990) (amount of pecuniary gain is not sole factor in determining individual's role).

The district court did not rely on whether Hua either profited, or packaged, cooked or distributed crack, and it was not required to. Even if the nature of his participation suggests that Hua played a lesser role, the district court was not constrained to award the adjustment. *See Crowley,* 285 F.3d at 560 (fact that another individual played "relatively greater role in the conspiracy" did not make decision to deny downward adjustment clearly erroneous); *see also United States v. Castillo,* 148 F.3d 770, 776 (7th Cir.1998) (greater participation by other co-conspirators may warrant upward adjustment for them, but does not guarantee minor role adjustment for less-involved defendant); *United States v. Kerr,* 13 F.3d 203, 206 (7th Cir.1993) ("the fact that one plays a much lesser role than another does not mean that one is a minor participant."). Indeed, the court acknowledged that Hua's role may have been less involved given that he did not "[make] sales every day or [buy] large quantities." The court concluded nonetheless that Hua's participation "put [him] right in the middle" of the conspiracy because his phone was used and he was trusted as a bodyguard to Julie. On this record, this is a reasonable interpretation of the facts.

Next, Hua attacks the district court's determination that his role was "integral" to the conspiracy. The district court reasoned that Hua provided essential contributions to the conspiracy and fully understood "what was going on." We have upheld the denial of a minor role reduction where a defendant played an

integral role in a conspiracy by providing critical services. *See United States v. Cain,* 155 F.3d 840, 844 (7th Cir.1998) (upholding refusal to grant mitigating-role adjustment where defendant provided "necessary services" by renting car, driving co-conspirator, and renting apartment in furtherance of drug conspiracy); *Castillo,* 148 F.3d at 776 (minor role adjustment properly denied where defendant provided "essential" services of transportation and sleeping accommodations); *see also United States v. Corral–Ibarra,* 25 F.3d 430, 439 (7th Cir.1994) ("we have upheld the denial of a downward adjustment under § 3B1.2 where a less culpable defendant nevertheless played an 'integral role' in the conspiracy").

Hua maintains that whether he played an integral role hinges on "whether drug sales would have occurred, but for [his] individual efforts." But that argument is misplaced. *United States v. Burnett,* 66 F.3d 137, 140 (7th Cir.1995) (" § 3B1.2 does not ask how easily [defendant] could have been replaced"); *cf. United States v. Redig,* 27 F.3d 277, 282 (7th Cir.1994) (even if defendant's drawing of bank floor plan could have been created by anyone who entered the bank, district court "was within its discretion" to conclude that drawing "was of real value" to the co-defendant bank robbers and that, consequently, defendant was not minor participant even though he was not present for robbery). The district court acknowledged that other co-conspirators also provided telephones for the venture, a fact that Hua emphasizes on appeal, but concluded that his role in procuring the phone was nonetheless "essential." Regardless whether others could or did provide cellular telephones, Hua's complicity in providing *his* name and address for the subscription supports the district court's conclusion that he contributed a necessary means of communication to the conspiracy. Hua's contention that he allowed Vu to use his name to subscribe to the cellular telephone only because Vu had bad credit is irrelevant; even by Hua's own calculation he knew "first-hand that Vu was dealing crack cocaine" in April 1999 and did nothing to prevent the telephone subscribed to him from being used to further the drug dealing.

The court also determined that Hua's role was not minor in light of the fact that he was trusted to act as a bodyguard for Julie, "the principal organizer and manager" in the conspiracy. *See United States v. Stephenson,* 53 F.3d 836, 850 (7th Cir. 1995) (no adjustment warranted for defendant who sold drugs and acted as bodyguard for co-conspirator); *cf. United States v. Tolson,* 988 F.2d 1494, 1504 (7th Cir.1993) (noting unlikelihood that drug dealer would invite along someone on a drug deal who did not have dealer's complete confidence and trust). Hua attempts to downplay his bodyguard role by claiming on appeal that he "unwittingly accompanied Julie" when she delivered drugs, but this contention is frivolous given Hua's plea agreement stipulation that he accompanied Julie "for her protection during crack deliveries knowing that she was selling crack cocaine for Vu." These facts sufficiently indicate that Hua was a trusted, and critical (not because he *could not* be replaced, but because he *was not* replaced), member of the conspiracy.

Lastly, Hua contends that the district court erroneously failed to consider that the 127.6 grams of crack he took responsibility for in his plea agreement led to a base offense level that overrepresented his role. A "minor role" adjustment may be appropriate where a defendant, through the relevant-conduct provisions of the guidelines, is held accountable for the acts of others. *Burnett,* 66 F.3d at 140. The

government argues that the 127.6 grams represents only the amount of cocaine in which Hua had personal involvement. Because the plea agreement limited the drugs attributable to Hua to the period from April 10, 2000 to June 19, 2000, he was held accountable only for drug transactions discovered through the wire tap on the telephone subscribed to him and transactions where he personally accompanied Julie. Hua responds that he was personally involved only in the one transaction for 2 grams where he instructed Julie to give a customer a discount rate. However, Hua himself admits that Vu, Julie, and the supplier Sharon Sawyer were held responsible for distributing 609.5 grams of cocaine. He also admits that he was held responsible for 127.6 grams "based only on [his] presence when Julie delivered the crack." His presence, especially considering his role as protection for Julie, sufficiently demonstrates his personal involvement in distributing the 127.6 grams.

Although not indisputable, the conclusion that Hua was not a "minor participant" is not clearly erroneous. *See Burnett,* 66 F.3d at 141; *see also Corral–Ibarra,* 25 F.3d at 439 (decision to deny minor role adjustment was not inevitable but was reasonable). The district judge explained the reasons for his belief that Hua's participation in the conspiracy was not so limited as to call for a § 3B1.2(b) reduction, and those reasons correspond to the facts and the applicable law.

The judgment of the district court is, therefore, AFFIRMED.